CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/12/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
       DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| THOMAS JEFFERSON CROSSINGS HOMEOWNERS' ASSOCIATION, INC., *Plaintiffs*, v. MANSOUR ETEMADIPOUR, *et al.*, *Defendants*. | CASE NO. 6:22-cv-00016 MEMORANDUM OPINION AND ORDER JUDGE NORMAN K. MOON |

This case comes to the Court on Defendants' motion for summary judgment. Plaintiff Thomas Jefferson Crossings Homeowners' Association, Inc. ("TJCHOA") sued Defendants Mansour Etemadipour and Nick Etemadipour for breach of contract in state court, claiming that Defendants violated the Covenants and Restrictions of TJCHOA's Declaration and Bylaws—a binding contract. Defendants, asserting diversity jurisdiction, then removed the case to federal court. They now argue that Plaintiff's breach of contract claim fails as a matter of law because (1) it was impossible for Defendants to comply with TJCHOA's Covenants and Restrictions, (2) the remedies sought are improper, and (3) Plaintiff has failed to join a required party. For the foregoing reasons, the Court will deny Defendants' motion for summary judgment, while also concluding that one of the remedies requested by Plaintiff—the demolition of Defendants' homes—is improper. The Court will also grant Plaintiff the opportunity to join JUD Management, LLC and Citadel Servicing Corporation as necessary parties.

## BACKGROUND

In December 2014, Defendants purchased lots three, four, and five within Thomas Jefferson Crossings subdivision in Forest, Virginia.[1] *See* Comp. ¶¶ 10–12; Dkt. 28 (Ex. 1). At all relevant times, Defendants' properties "were subject to the Covenants and Restrictions set forth in the Declaration and Bylaws of the Thomas Jefferson Crossings Homeowners['] Association." Dkt. 24 at 6; Dkt. 28 (Ex. 1). Both parties agree that TJCHOA's Covenants and Restrictions constitute "a binding contract between the parties." Dkt. 24 at 6; Dkt. 28 (Ex. 1).

TJCHOA's Covenants and Restrictions empower TJCHOA's Architectural Review Board to evaluate any construction on TJCHOA properties. Dkt. 28 (Ex. 3) at 29. Accordingly, Defendants would typically be required to submit their building plans to the Architectural Review Board. *Id.* It is undisputed, however, that TJCHOA's Architectural Review Board did not exist when Defendants were constructing their homes. Dkt. 24-2 ¶ 7; Dkt. 24-3 ¶ 6. Defendants contend that they were, consequently, absolved of the responsibility of seeking approval for their design plans. Dkt. 24 at 6–7. But this claim is disputed. Plaintiff, for its part, responds that Defendants were required to submit their building plans to TJCHOA's Board of Directors and failed to do so. Dkt. 28 at 3–4; *id.* (Ex. 2) at 10–11.

Regardless, Defendants proceeded to construct three homes on their lots. Comp. ¶¶ 27–29. Defendants' homes were built using the architectural plan—the "Carrington II" Plan—originally utilized by the neighborhood's developer. Dkt. 24-2 ¶ 5; Dkt. 28 (Ex. 6); Dkt. 24 (Ex. A). During the construction process, Defendants kept the president of TJCHOA informed about

---

[1] These properties now bear addresses in Forest, Virginia; those addresses are 1060 Governors Lane, 1072 Governors Lane, and 1080 Governors Lane. Dkt. 24-1 ¶ 6.

their progress; indeed, on multiple occasions, they invited him on walk-throughs and inspections of the properties. Dkt. 24-2 ¶ 8.

Nevertheless, Plaintiff complains of various deficiencies with Defendants' homes. While Defendants claim to have "made every effort to construct their homes within the guidelines of the HOA," Dkt. 24 at 4, it is undisputed that Defendants' homes have at least two features that do not adhere to TJCHOA regulations (1) Defendants built decks out of pressure-treated wood instead of trex composite or other similar materials and (2) Defendants installed non-conforming windows.[2] Dkt. 24 at 4–5. These nonconformities and the fact that Defendants never received explicit permission for them are the lynchpin of Plaintiff's breach of contract claim.

Notably, Defendants no longer have title to the three properties at issue. Before the inception of this litigation, they transferred title to JUD Management, LLC—a New Jersey entity formed by Judith Etemadipour, Defendant Mansour Etemadipour's spouse.[3] Dkt. 24-6 ¶¶ 3–6; Dkt. 28 (Ex. 13). Plaintiff lacked notice of this conveyance until after the beginning of the present lawsuit, and they contend that they still have not received proper notice of Defendants' transfer. Dkt. 28 at 10; *id.* (Ex. 15) ¶ 16.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute

---

[2] Plaintiff also complains that Defendants used non-conforming light fixtures and mailboxes. Comp. ¶ 32. But there is a dispute as to whether those fixtures are non-conforming. Dkt. 28 at 6. There is also a dispute about whether Defendants' utilization of crawl spaces, as opposed to slab construction violated HOA regulations. *See* Dkt. 28 (Ex. 9).

[3] Plaintiff claims that the conveyance is fraudulent, Dkt. 28 at 9, and is currently litigating the issue in state court in an attempt to set aside Defendants' conveyance. *Id.* (Ex. 11).

is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

## ANALYSIS

"In Virginia, the elements of a cause of action for breach of contract are as follows: (1) a legal obligation of a defendant to the plaintiff; (2) a violation or a breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Brown v. Harms*, 467 S.E.2d 805, 807 (Va. 1996); *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). Here, the parties do not dispute that Defendants owed a legal duty to Plaintiff. Indeed, both parties acknowledge that TJCHOA's Covenants and Restrictions constitute "a binding contract between the parties" and recognize that that contract placed obligations on Defendants. Dkt. 24 at 6; Dkt. 28 (Ex. 1). Rather, the parties dispute (1) whether Defendants breached the contract; (2) what remedies, if any, are appropriate; and (3) whether the case should be dismissed for not joining a necessary party.

I.  **There is a dispute of material fact over whether Defendants breached their contract with TJCHOA.**

Nonperformance of a contract is not a breach when performance has been prevented by the opposing party. As a general rule, "[t]here is an implied condition of every contract that one party will not prevent performance by the other party." *Whitt v. Godwin*, 139 S.E.2d 841, 844 (Va. 1965). This "so-called prevention doctrine" can be used either offensively—i.e., to recover damages—or defensively—i.e., to excuse nonperformance of a contract. *Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co., LLC*, 806 S.E.2d 740, 745 (Va. 2017). When the prevention doctrine is used offensively, a plaintiff must demonstrate that "the action of the party whose conduct is alleged to have prevented performance must be wrongful, and, accordingly, in excess of his legal rights." *Whitt*, 139 S.E.2d at 844 (citations omitted) (cleaned up). In contrast, "specific malevolent intent need not be shown when the doctrine is applied defensively." *Rastek Constr. & Dev. Corp.*, 806 S.E.2d at 746 (citations omitted) (cleaned up). Nevertheless, even when using the doctrine defensively, the nonperforming party must still demonstrate that "'the preventing party … deliberately t[ook] steps to impede performance or [ ] arbitrarily impaired the[ir] ability to perform'" the contract. *Id.* (quoting 13 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 39:10, at 597 (4th ed. 2013)).

In the present case, Defendants endeavor to use the prevention doctrine defensively. They claim that "any nonperformance of the contract between the parties was brought about by Plaintiff's failure to establish" an Architectural Review Board. *See* Dkt. 24 at 7. Plaintiff's breach of contract claim stems from Defendants' purported failure to receive permission to start building their homes and to construct homes with various features that did not conform to

TJCHOA standards.[4] Today, individuals, like Defendants, would be required to submit their building plans to TJCHOA's Architectural Review Board. Dkt. 28 (Ex. 3) at 29. But it is undisputed that the Architectural Review Board did not exist when Defendants were constructing their homes. Dkt. 24-2 ¶ 7; Dkt. 24-3 ¶ 6. As a result, Defendants posit that Plaintiff "cannot show that it was possible for Defendants to comply with the contract as the Plaintiffs themselves admit they do not have records showing adequate systems in place." Dkt. 24 at 6–7.

Plaintiff responds that there was an alternative, established system: specifically, the TJCHOA Board had the authority to "'[g]rant or withhold approval of any action by one or more Lot Owners or other persons entitled to occupancy of any Lot which would change the exterior appearance of any Lot or any portion of the Development….'"[5] Dkt. 28 at 12 (quoting Dkt. 28 (Ex. 2) at 10–11).

"[V]iew[ing] the evidence in the light most favorable to the nonmoving party," *Variety Stores, Inc.*, 888 F.3d at 659, the Court concludes that there is a dispute of material fact about whether Plaintiff prevented Defendants from having their architectural plans approved. On the one hand, if it is true that TJCHOA's Architectural Review Board was the only entity capable of approving building plans, it would likely be appropriate to award summary judgment to Defendants. Plaintiff cannot neglect to form an Architectural Review Board and then complain

---

[4] The parties devote much space to debating whether Defendants "made every effort to construct their homes within the guidelines of the HOA." Dkt. 24 at 4; *see id.* at 4–5; Dkt. 27 at 5–7. But the Court need not address this issue. First, it is heavily disputed, and second, as discussed *ante*, Defendants' summary judgment motion proceeds on other grounds.

[5] Notably, Plaintiff does not submit any evidence that this system was regularly used by TJCHOA. Rather, there is some evidence indicating that it was not. *Cf.* Dkt. 24-2 ¶ 7 ("At the time the construction began on the Etemadipours' homes, the Thomas Jefferson Crossings Homeowners' Association did not have an Architectural Review Board, or Architectural Review Committee of any kind.").

that Defendants did not make use of that non-existent entity. Such bad faith would surely count as "arbitrarily impair[ing]" Defendants' ability to perform on the contract. *Rastek Constr. & Dev. Corp.*, 806 S.E.2d at 746 (citations omitted); *see also id.* at 746 n.7 (noting that the prevention doctrine has some overlap with the doctrine of good faith and fair dealing).

But on the other hand, whether the Architectural Review Board was the only entity capable of approving building plans is disputed. The contract between the two parties lists the TJCHOA Board as also being able to approve building plans. Dkt. 28 (Ex. 2) at 10–11. It is, however, unclear whether the TJCHOA Board actually performed this function. Plaintiff submits no evidence that this system was ever utilized, and the former president of the TJCHOA indicates that it was not. *Cf.* Dkt. 24-2 ¶ 7. Regardless, on this record, there is a dispute of material fact about whether alternative means of architectural approval were available to Defendants.[6]

In sum, denying Defendants' motion for summary judgment is appropriate in this case because it is unclear whether Defendants failed to avail themselves of an available process.

**II.     Despite concluding that an injunction permitting the demolition of Defendants' homes is inappropriate, the Court will not award Defendants summary judgment as to Plaintiff's other requested damages.**

Plaintiff requests both equitable and legal remedies as recompense for Defendants' alleged breach of contract. Specifically, it seeks an injunction, pursuant to Va. Code § 55.1-1828(A), and $450,000 to return Defendants' lots to their "previous unimproved condition." Comp. ¶¶ 51–53. TJCHOA also asks for injunctive relief "preventing the further construction or

---

[6] Notably, Defendants claim that their "inclusion and consistent collaboration with the TJCHOA Board President during construction constituted substantial compliance with the TJCHOA bylaws, covenants and restrictions." Dkt. 31 at 17. However, this is disputed. Plaintiff posits that "William James, former Association President, could not act unilaterally to approve or deny plans to construct homes on the lots." Dkt. 28 at 8.

maintenance of unapproved improvements" and any other appropriate relief. *Id.* Defendants, for their part, claim that tearing down Defendants' homes is inappropriate; they also aver that Plaintiff has not put forward any evidence in support of its other requested relief. The Court will hold that tearing down Defendants' homes is improper while also concluding that Plaintiff's other requested relief may be appropriate after trial.

   a. *Tearing down Defendants' homes is not an appropriate remedy.*

Va. Code § 55.1-1828(A) allows for damages *or* injunctive relief when a "lot owner" fails to comply with a property owner's association's declaration. Still, "[t]he granting of an injunction is an extraordinary remedy and rests on sound judicial discretion to be exercised upon consideration of the nature and circumstances of a particular case." *Levisa Coal Co. v. Consolidation Coal Co.*, 662 S.E.2d 44, 53 (Va. 2008) (citations omitted). Thus, "[i]n general, a court may not grant injunctive relief unless a party has shown that party would suffer irreparable harm without the injunction, and that the party has no adequate remedy at law." *May v. R.A. Yancey Lumber Corp.*, 822 S.E.2d 358, 367 (Va. 2019) (citing *Wright v. Castles*, 349 S.E.2d 125, 129 (Va. 1986)).

However, in cases involving a violation of a real covenant, an injunction "is granted almost as a matter of course" unless a defendant can meet an exception. *Spilling v. Hutcheson*, 68 S.E. 250, 252 (Va. 1910); *see also Norfolk S. Ry. Co. v. E.A. Breeden, Inc.*, 756 S.E.2d 420, 425 (Va. 2014) (collecting cases). Important here, Virginia courts have recognized an exception for when an injunction "would create a hardship or injustice that is out of proportion to the relief sought"—i.e., a hardship defense. *Perel v. Brannan*, 594 S.E.2d 899, 904 (Va. 2004). Virginia courts have not clearly identified what level of hardship or injustice is required to meet this exception, but they have determined that a "defendant must prove a level of hardship beyond [mere] 'inconvenience.'" *Id.* at 905 (citing *Spilling*, 68 S.E. at 251).

Regardless of the standard, this is a case where the hardship defense is appropriate. Even assuming that Plaintiff has suffered an injury from Defendants' alleged violations of TJCHOA's Declaration and Bylaws, demolition of their homes would be grossly out of proportion with the relief sought. As Defendants point out *and* Plaintiff acknowledges,[7] replacing the supposedly non-conforming mailboxes, wood decks, and windows does not require demolishing the houses. *See* Dkt. 28 at 7–8. Indeed, it would be wasteful to do so. *Cf. Boomer v. Atl. Cement Co.*, 26 N.Y.2d 219, 223 (1970) ("The ground for the denial of injunction, notwithstanding the finding both that there is a nuisance and that plaintiffs have been damaged substantially, is the large disparity in economic consequences of the nuisance and of the injunction.").

Therefore, the only alleged non-conformity that could conceivably support Plaintiff's request is Defendants' use of a crawl space instead of slab construction, and the Court will not determine that this supposed non-conformity warrants destruction of Defendants' homes. First, it is not clear that TJCHOA's Declaration and Bylaws give them the power to regulate whether lot owners use a crawl space or slab construction. TJCHOA's Architectural Review Board and Board of Directors only have the power to regulate the external appearance of houses under their jurisdiction.[8] Dkt. 28 (Ex. 3) at 29; Dkt. 28 (Ex. 2) at 10–11. And on this record, the Court cannot determine that the use of a crawl space—in lieu of slab construction—affects a home's external appearance. Moreover, contrary to Plaintiff's claims, the recommended construction

---

[7] Notably, Plaintiff does not explain why destruction of Defendants' homes is appropriate. *See generally* Dkt. 28. Instead, Plaintiff appears to shift its focus to other requested remedies. *See, e.g., id.* at 15–17.

[8] Significantly, courts must "strictly construe" real covenants. *See Bauer v. Harn*, 286 S.E.2d 192, 196 (Va. 1982) ("We agree that restrictive covenants must be strictly construed against the party seeking enforcement, and that substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property.").

plans, that Plaintiff attached as an exhibit, do not appear to require slab construction. *See* Dkt. 28 (Ex. 9). True, the home design example included in that exhibit uses slab construction, *id.* at 1–9, but slab construction is not listed on the "[b]uilding [c]ompliance [l]ist" for the neighborhood. *Id.* at 10–12. In short, no exhibit purports to mandate slab construction.

Of course, even if slab construction was required by TJCHOA regulations, the Court would still not order the destruction of Defendants' homes. It is surely more than a mere inconvenience to have one's home destroyed because of a largely indiscernible deviation in design plans; such a remedy should be considered "'oppressive or otherwise inequitable.'" *Perel*, 594 S.E.2d at 905 (quoting *Harper v. Virginian Ry.*, 86 S.E. 919, 922 (W. Va. 1915)). Under these circumstances, the Court will refuse to use its equitable discretion to award such an inequitable remedy.

At bottom, the Court will award Defendants summary judgment on the issue and deny Plaintiff's request to tear down Defendants' homes.

> b. *The Court will deny Defendants' summary judgment motion as to Plaintiff's other remedies.*

Just because the Court will decline Plaintiff's request to tear down Defendants' homes does not mean Plaintiff is not entitled to other remedies. In addition to asking that Defendants' homes be demolished, Plaintiff also requests an injunction to "prevent further construction or maintenance of unapproved improvements."[9] Comp. ¶¶ 51–53.

Here, the Court will deny Defendants' motion for summary judgment on the issue of

---

[9] In its complaint, Plaintiff requested other appropriate relief, Comp. ¶¶ 51–53, and Plaintiff, in its brief in response to Defendants' summary judgment motion, argued that monetary damages were warranted. Dkt. 28 at 13. But at the hearing on Defendants' summary judgment motion, Plaintiff acknowledged that it has mustered no proper evidence to prove monetary damages. Dkt. 32. Therefore, the Court will only address Plaintiff's request for injunctive relief.

whether this form of injunction is warranted. As mentioned above, *see supra* Section I, there is a genuine dispute over whether Defendants breached TJCHOA's Bylaws and Declarations. And when a case involves the potential violation of a real covenant—such as those enumerated in TJCHOA's Declaration, an injunction "is granted almost as a matter of course" unless a defendant can meet an exception. *Spilling*, 68 S.E. at 252. Unlike with the destruction of Defendants' homes, an injunction to "prevent further construction or maintenance of unapproved improvements" is far narrower. Comp. ¶¶ 51–53. It follows that if Plaintiff can demonstrate that Defendants violated TJCHOA's Declaration, an injunction may be warranted.

In sum, the Court will award Defendants summary judgment on the issue of whether their houses should be torn down but deny it as to whether other, more reasonable remedies are available to Plaintiff.

### III. The Court will allow the joinder of necessary parties.

Finally, Defendants assert that this matter should be dismissed because Plaintiff failed to join a necessary party—JUD Management, LLC ("JUD"), an entity owned by Defendant Mansour Etemadipour's spouse.[10] Dkt. 24 at 11–13. Without explanation, Defendants contend that they—and JUD—would be prejudiced if Plaintiff was allowed to join JUD at "this late stage of the litigation." *Id.* Plaintiff, in response, alleges bad faith by Defendants and disputes that Defendants would be prejudiced if JUD was added to the suit. Dkt. 28 at 17–19.

As a general rule, "[c]ourts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir.

---

[10] Plaintiff does not dispute that JUD Management, LLC is a necessary party. Dkt. 28 at 17–19; s*ee* Fed. R. Civ. P. 19. In fact, Plaintiff identifies another party—Citadel Servicing Corporation—that must also be added. Dkt. 28 at 18.

1999) (collecting cases). In determining whether to dismiss a case for lack of joinder, a court must look to the individualities of each case and "consider[] 'the practical potential for prejudice' to all parties, including those not before it." *Id.* (quoting *Schlumberger Indus., Inc. v. National Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir.1994)).

Here, Plaintiff has the better argument: there is a low potential for prejudice to any party in this action. As mentioned above, JUD is a company owned and operated by Defendants' family, Dkt. 24 at 5, and Citadel Servicing Corporation only recently became an interested party in this lawsuit. *See* Dkt. 28 (Ex. 12). So, because Defendants have not identified any prejudice which may result from the Court allowing Plaintiff to join these parties, the Court will allow joinder in this case. After all, "[d]ismissal of a case is a drastic remedy … which should be employed only sparingly." *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 918 (4th Cir. 1999).

## CONCLUSION

For the above reasons, Defendants' motion for summary judgment is **GRANTED** on the issue of whether the demolition of their houses is an appropriate remedy; however, it is **DENIED** in all other respects. Dkt. 23. The Court will also **GRANT** Plaintiff the opportunity to join JUD Management, LLC and Citadel Servicing Corporation as necessary parties. Plaintiff has seven days to file an amended complaint adding the new parties.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion & Order to all counsel of record.

Entered this 12th day of October, 2023.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE